COLUMBUS BAR ASSOCIATION *v.* EWING.

[Cite as *Columbus Bar Assn. v. Ewing* (1996), 75 Ohio St.3d 244.]

(No. 95–801—Submitted September 27, 1995—Decided March 6, 1996.)

248

*Bloomfield & Kempf* and *David S. Bloomfield; Michael Distelhorst, Ronald L. Redmon* and *Bruce A. Campbell,* Bar Counsel, for relator.

*Charles W. Ewing, pro se; Lucas, Prendergast, Albright, Gibson & Newman* and *Rankin M. Gibson,* for respondent.

*Per Curiam.* In his objections to the board's report, respondent argues that the evidence did not establish the charged violations of DR 1–101(A), 1–102(A)(4), 1–102(A)(6), 5–101(A), 5–105(A), 5–105(B), and 6–102(A). With respect to Count One, respondent asserts that the suspension of his real estate sales license did not result from any "proceedings" referred to in the bar application. We reject this argument because Question 12(a) in the application unmistakably asked him to disclose whether he had ever been a party to "any action or legal proceeding," and it specifically identified "civil" and "administrative" matters, which plainly include proceedings before the Ohio Real Estate Commission and appeals therefrom. Moreover, we agree with the board that proof of good character was required for respondent to obtain his real estate sales license and that real estate sales is a "profession" for purposes of the bar application. Accordingly, we

concur that respondent violated DR 1–101(A) in failing to reveal his real estate sales license and the suspension of that license.

With respect to Count Two, respondent insists that the Mowerys realized he was proceeding with the buyout option because (1) they were negotiating the sale of property subject to a lien the executed buyout would remove, and (2) FmHA would not consider the buyout until the Chapter 12 bankruptcy petition had been dismissed. However, we agree with the board's finding that respondent did not fully advise the Mowerys of his revival of the net recovery buyout option, particularly his anticipated involvement in that transaction. The Mowerys' testimony, as corroborated by Allen and Tope, convinces us that they had no knowledge of respondent's intention to purchase their home and farm for himself and his business associate/client. Moreover, we view respondent's delivery of his memorandum on the Friday before the scheduled closing as an abrupt abandonment of the Mowerys, a violation of their trust, and a power play designed to further his own interests and those of his business associate/client. We are appalled by respondent's purchase scheme and by his coercive tactics to gain the Mowerys' approval of it. Accordingly, we also concur that respondent violated DR 1–102(A)(4), 1–102(A)(6), 5–101(A), 5–105(A), 5–105(B), and 6–102(A), as found by the board.

Respondent also argues in his objections that the investigation of the charges against him was biased, prejudicial, and required dismissal of the complaint. In the main, he complains that the Mowerys received assistance in filing their grievance from a professional adversary of respondent's, that relator failed to sufficiently investigate a complaint respondent lodged against that attorney, that a second professional adversary initially participated in the investigation and withheld exculpatory evidence, that an attorney associated with a third professional adversary signed the formal complaint against him, and that members of the investigating committee threatened reprisals against respondent and his counsel. We see little evidence, apart from respondent's own representations, to support the conspiracy he alleges and, regardless, find no evidence of prejudice. Ample evidence establishes the misconduct determined by the panel and board, and nothing contained in this record or proffered absolves respondent. Accordingly, this objection is overruled.

Respondent further argues for dismissal on the ground that relator failed to complete its investigation within the one-year time limit imposed by Gov.Bar R. V(4)(D)(2), raising a presumption of unreasonable delay. Investigations that extend beyond one year from the date the grievance is filed are prima facie evidence of unreasonable delay under Gov.Bar R. V(4)(D)(3); however, no grievance can be dismissed under the rule without proof that respondent was denied his rights to a fair hearing. No such proof exists in this case, as

respondent was provided every opportunity to present relevant evidence in his defense during the two days in which the hearing was conducted. Accordingly, this objection is also overruled.

Respondent further argues a denial of due process, claiming, in essence, that he was denied discovery of exculpatory evidence, that the hearing panel declined to admit portions of his evidence, and that the hearing transcripts were not available for review when his post-hearing brief was due. We see no indication that respondent was denied proof that could .establish the Mowerys' informed consent to his and his client/business associate's purchase of their home and farm. Moreover, we tend to agree with the panel's evidentiary rulings, most of which appropriately confined respondent to relevant matters. Furthermore, we have no reason to conclude that respondent was denied access to the hearing transcripts in this case—the transcripts were filed with the board by November 22, 1994, and respondent's post-hearing brief was filed on January 10, 1995. Accordingly, we overrule this objection as well.

Having adopted the board's findings of misconduct and overruled respondent's objections, we turn to relator's objection to the sanction recommended by the board. Relator asserts that respondent's misconduct is at least as egregious as that for which we have imposed indefinite suspensions in several recent cases, most notably *Disciplinary Counsel v. Doyle* (1995), 71 Ohio St.3d 574, 645 N.E.2d 1244 (attorney indefinitely suspended for failing to register and repeatedly representing himself as licensed and in good standing), and *Disciplinary Counsel v. Mesi* (1995), 72 Ohio St.3d 45, 647 N.E.2d 473 (attorney indefinitely suspended upon his conviction of a felony, his concealment of a client's assets, and his unauthorized loan of one client's funds to another, among other disciplinary infractions). We agree.

In assessing respondent's conduct toward the Mowerys, the panel stated:

"Mr. and Mrs. Mowery believed, after reading the Memorandum [of Settlement and Conflicting Interest of Counsel], that they would lose their property if they did not deliver Thirty Three Thousand Dollars ($33,000.00) to Farmers Home Association [*sic,* Administration] on Monday[,] April 30, 1990. Mr. and Mrs. Mowery were without independent legal counsel to assist them in this eleventh hour drama orchestrated and designed by Respondent. Clearly Respondent viewed his own self interest above that of his clients, Mr. and Mrs. Mowery. The Respondent now wishes to only praise his conduct because Mr. and Mrs. Mowery were able to save their land and home from foreclosure. It was not the efforts of Respondent, but the generosity of Mrs. Mowery's mother that resulted in resolving the crisis set in motion by Respondent."

Respondent preyed upon the Mowerys' economic distress, trust, and lack of expertise in financial management. His conduct warrants a more severe penalty

than a one-year actual suspension followed by a year of probation. Accordingly, we order that respondent be indefinitely suspended from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.